Shields v. Conway.

---

CASE 6.—ACTION BY WILLIAM CONWAY AGAINST ALEX-
    ANDER M. SHIELDS FOR SLANDER.—March 24,
    1909.

## Shields v. Conway

Appeal from Nelson Circuit Court.

SAMUEL E. JONES, Circuit Judge.

Judgment for plaintiff, defendant appeals—Affirmed.

1. Witnesses—Impeachment—Evidence to Sustain Character—
   "Impeachment of General Reputation of Witness."—Proof of
   the conviction of a witness of a felony as permitted by Civ.
   Code Prac. Sec. 597, is an impeachment of the general reputa-
   tion of the witness within section 599, providing that evidence
   of the good character of a witness is inadmissible until
   his general reputation has been impeached, authorizing evi-
   dence of the general good reputation of the witness for truth
   and veracity.
2. Witnesses—Impeachment—Evidence in Rebuttal.—A witness
   impeached by proof of his conviction of a felony, as per-
   mitted by Civ. Code Prac. Sec. 597, may not explain the
   conviction with a view of rebutting the impeachment.

Shields v. Conway.

3. Witnesses—Impeachment—Evidence to Sustain Character—
"Impeachment of General Reputation of Witness."—Proof that
a witness is related to the party offering him, that he is in-
terested in the result of the controversy, that he has made
declarations in conflict with his testimony is not an impeach-
ment of the general reputation of the witness within Civ.
Code Prac. Sec. 599, providing that evidence of the good
character of a witness is inadmissible until his general rep-
utation has been impeached, and evidence of his good char-
acter is inadmissible in rebuttal.

KELLY & CHERRY and N. W. HALSTEAD for appellant.

POINTS AND AUTHORITIES.

1. Evidence of the good character of a witness is not ad-
missible until his general reputation has been impeached. (Civil
Code, Secs. 597-599.)

2. Under the provisions of Sec. 597 of Civil Code a witness
may be impeached by the party against whom he is introduced
by four different methods, towit:

    (a) By contradictory evidence;
    (b) By showing that he has made statements different
        from his testimony;
    (c) By evidence that his general reputation for untruth-
        fulness or immorality renders him unworthy of belief;
    (d) By showing by examination of the witness, or by the
        record of a judgment, that he has been convicted of a
        felony;

And evidence of the witness' general reputation is not admissible,
except where he is impeached by evidence that his general rep-
utation for untruthfulness or immorality renders him unworthy of
belief. (Civil Code, Secs. 597, 599; Vance et ux v. Vance, 2 Met.,
581; Evans v. Evans, 93 Ky., 518.)

3. The authorities in the different jurisdictions are divided
upon the question of whether or not evidence of the good char-
acter of a witness can be introduced in support of the witness.
when he is impeached by the party against whom he is introduced
by proof of his conviction of a felony, but the better rule is that
proof of conviction of crime cannot be explained away by testi-
mony as to good repute. (Wigmore on Evidence, Vol. II, Secs.
1105, 1106; People v. Rector, 19 Wend., 600; People v. Gray, 7 N.
Y., 378; Hannah v. McKellip, 49 Barb., 342.)

JOHN A. FULTON for appellee.

PROPOSITIONS OF LAW DISCUSSED.

1. Proof of good character of plaintiff in suit for slander ad-
missible.

2. When a witness has been impeached by proof of conviction
of felony, evidence of general good reputation of witness ad-
missible.

Shields v. Conway.

### AUTHORITIES CITED.

Civil Code, Secs. 597, 599; Cyclopedia of Evidence, Vol. 7, p. 13 and 242, Sec. 5; A. & E. Ency, of Law, 2nd Ed., Vol. 30, p. 1152; Wigmore on Evidence, Vol. 2, p. 1320, Sec. 1117; Louisville & Nashville Railroad Co. v. McClish, 115 Fed., 268; People v. Amanacus, 50 Cal., 233; Mercer v. State, 40 Fla., 216; State v. Farmer, 84 Me., 436; Curtis v. Cochran, 50 N. H., 242; Wick v. Baldwin, 51 Ohio St., 51; Birmingham R. & El. Co. v. Ellard, 135 Ala., 433; Farmer v. State, 35 Tex. Cr. R., 270; Kramer v. State, 117 Wis., 350; Braddee v. Brownsfield R. Co., 9 Watts (Pa.), 124; Gertz v. Fitchburg R. C., 137 Mass., 77; Carter v. Commonwealth, 13 S. W., 921; Williams v. Greenwade, 3 Dana, 432; Smith v. Lovelace, 1 Dana, 215.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

Appellee, who was plaintiff below, brought this action in slander against the appellant, Shields, who was defendant below, charging that in the presence and hearing of divers and sundry persons Shields falsely and maliciously spoke of and concerning him the following words, to-wit: "Oh, yes; you are paving the way to have another lawsuit with me, so you can go down to Bardstown and swear to some more damned lies like you did on other trial"—thereby meaning to charge Conway with the crime of perjury committed in his testimony in a case pending between the parties a short time previously. The answer did not deny the fact that Conway had previously testified in the suit, but did deny speaking the words charged. Upon a trial before a jury the plaintiff recovered judgment for $400.

On the trial of the case, after a witness named Barnett testified in behalf of plaintiff, the defendant introduced a record of the Nelson Circuit Court, consisting of an indictment against Barnett and a judgment, showing that in 1887 on the charge of murder he was convicted and his punishment fixed at eighteen years in the State penitentiary. Thereupon the plaintiff introduced in rebuttal a number of witnesses, who testified to the general good reputation of

Barnett for truth and morality. The admission of this evidence is the principal error complained of. It is the contention of appellant that this evidence was incompetent because the general reputation of Barnett was not attacked or impeached by the introduction of the record of his conviction. Section 597 of the Civil Code of Practice declares that: "A witness may be impeached by the party against whom he is produced, by contradictory evidence, by showing that he has made statements different from his present testimony, or by evidence that his general reputation for untruthfulness or immorality renders him unworthy of belief; but not by evidence of particular wrongful acts, except that it may be shown by the examination of a witness, or record of a judgment, that he has been convicted of felony." And section 599 provides: "Evidence of the good character of a witness is inadmissible until his general reputation has been impeached." Under section 597 it was competent for the defendant to introduce the record of Barnett's conviction, but the admissibility of the evidence of his good character depends upon the question whether or not the introduction of this record was such an impeachment of his general reputation, within the meaning of section 599, as authorized the introduction of evidence of his good character. This precise question has not heretofore been decided by this court, but it has come before other courts of last resort—some of them holding that evidence of this character is competent, and others holding it incompetent.

In our opinion the evidence was competent. The purpose in introducing the record of conviction was to impeach the general reputation of the witness, and to impress the jury with the fact that he was not worthy of belief. However serious an offense a man may have committed, and however damaging to his reputation it may be, he should be allowed the privilege of outliving the odium attached to it, and rein-

stating himself in the confidence and respect of his
neighbors and acquaintances. No matter how bad a
man may have been, or how low in the estimation of
his neighbors he may have fallen, he should not be
denied the right to reform or the high privilege of
becoming an honored and useful citizen; and when
he does so re-establish himself, and the record of
his former delinquency is offered to discredit him, he
should have the right to show that his reformation is
genuine, and that his neighbors and acquaintances re-
gard his general reputation for truthfulness and
morality as good. It would be a hard and almost
cruel rule to lay down that a man on the witness stand
might be confronted with the record of a crime, com-
mitted many years before, offered for the purpose of
embarrassing, humiliating and discrediting him, and
yet denied the right to show by persons competent and
qualified to speak that afterwards by good conduct
and an upright life he had established himself in the
respect of his neighbors. We think this conclusion
fully authorized by a fair construction of the Code
provisions referred to. A witness may not be im-
peached by evidence of particular wrongful acts,
with the exception that it may be shown that he has
been convicted of a felony. Although he may have
committed a dozen particular wrongful acts, each in-
volving greater moral turpitude than many felonies,
yet evidence of them is not competent; but if
he has committed one amounting to a felony,
followed by a conviction, this one offense may be
offered in evidence against him. It is therefore mani-
fest that the Legislature intended to place the one
act followed by a conviction for a felony in a class
different from other wrongful acts not so punished,
and in the same category as an attack upon the gen-
eral reputation of the witness. A witness cannot be
impeached by evidence of particular wrongful acts,
because he may not be prepared to meet them; and,
if he was, to allow an explanation for each, would

often unreasonably protract the trial, besides bringing into it many side issues. And, as the witness cannot be impeached by evidence of particular wrongful acts, neither can evidence be offered to sustain his character, as such evidence is not admissible until his good character has been put in issue—until an attack has been made upon it in a general way. But a witness may be impeached by a record of conviction for a felony, and, as he cannot excuse or justify its commission or go behind the judgment, it would follow that if there was no other way by which he could show the jury or the court that he was truthful and moral, he must stand mute before the silent but impressive evidence of his guilt, and see his reputation attacked without an opportunity to defend. Although a witness when thus impeached may not go behind or explain the conviction, yet he may show that since the judgment was pronounced he has lived an honorable and upright life and is held in high esteem by friends and neighbors; and this, upon the ground that the evidence of conviction is in fact and truth an attack upon his general reputation within the fair meaning of the Code.

But counsel say that, if it is allowable to offer evidence of good character to rebut the presumption of unworthiness arising from a conviction for a felony, it would logically result in allowing a witness who had made contradictory statements or declarations in conflict with his present testimony, or who was shown to have an interest in the case, to introduce evidence in support of his good character. There is, however, no reason for carrying the rule we have announced to this extent. A witness may be related to the party in whose behalf he is testifying, or he may be interested in the result of the controversy, or he may have made contradictory statements, or declarations in conflict with his present testimony, but evidence of these facts, or any or all of them, would not be an impeachment of the general reputation of

the witness for morality and truth. A witness of the highest character may be related to a party to the litigation, or interested in the result of the trial, or have made statements contradictory of his evidence, but these circumstances do not involve his general reputation for truthfulness, nor are they regarded as impeaching his character. We have carefully examined the instruction criticized, but do not find it open to the objection urged against it.

Perceiving no error, the judgment is affirmed.