## BOYER v. UNITED STATES.
### No. 221.

Municipal Court of Appeals for the
District of Columbia.

Nov. 22, 1944.

Alfred F. Goshorn, of Washington, D.
C., for appellant.

John D. Lane, Asst. U. S. Atty., of Washington, D. C. (Edward M. Curran, U. S.
Atty., and John P. Burke, Asst. U. S. Atty.,
both of Washington, D. C., on the brief),
for appellee.

Before RICHARDSON, Chief Judge,
and CAYTON and HOOD, Associate
Judges.

HOOD, Associate Judge.

This is an appeal from a conviction upon a charge of obtaining money and property under false pretenses. Code 1940, §
22—1301.

Appellant was arrested March 11, 1944,
and arraigned March 13. The case was set
for trial on March 27, and on that day
was continued at the request of appellant
until March 29. When the case was called
for trial on the 29th, appellant requested
a further continuance in order that his
handwriting expert might examine the disputed check. At that time the expert was
examining the check and the court refused
a further continuance but granted permission to the expert to continue his examination while the trial was in progress and
during the lunch hour. The expert examined the check in the morning, during the
lunch hour, and for sometime in the afternoon, but was never called as a witness for
appellant. Appellant assigns as error the
court's refusal to grant the requested con-

tinuance and says that he was forced to go to trial without the benefit of the testimony of his handwriting expert.

We have held, in accordance with the general rule, that postponement or continuance of a trial is within the discretion of the trial court and its action will not be disturbed on appeal except for an abuse of discretion. Taylor v. Yellow Cab Co., Mun.App.D.C., 31 A.2d 683, 71 W.L.R. 380. No explanation is here offered why permission for examination of the check by the expert was not requested at an earlier date or why request for the continuance was delayed until the case was called for trial. Furthermore, the record does not show that the expert's failure to testify was due to a lack of time for examining the check. As far as the record discloses, the expert may have completed his examination prior to the close of the trial and his failure to testify may have been due to other causes. We cannot hold there was an abuse of discretion on the part of the trial court. Cf. Tomlinson v. United States, 68 App.D.C. 106, 93 F.2d 652, 114 A.L.R. 1315, certiorari denied 303 U.S. 646, 58 S.Ct. 645, 82 L.Ed. 1102.

Appellant asserts that the trial court was in error in refusing to grant his motion for a directed verdict at the close of the Government's case. Any error in that respect, however, was waived when appellant proceeded to offer evidence in his behalf. Rogers v. District of Columbia, Mun.App.D.C., 31 A.2d 649, 71 W.L.R. 655. Appellant argues that this rule ought not to be applied in criminal cases, but it is too well established in this jurisdiction to be questioned by us. Smith v. United States, 61 App.D.C. 344, 62 F.2d 1061; Murray v. United States, 53 App.D.C. 119, 288 F. 1008, certiorari denied 262 U.S. 757, 43 S.Ct. 703, 67 L.Ed. 1218.

On cross-examination of appellant the Government brought out that he had been previously convicted of embezzlement in the State of Virginia. Appellant sought to explain the circumstances of his conviction but was not allowed to do so. This is assigned as error. The evidence of the prior conviction was offered under Section 14—305 of the Code which provides, in part, that "No person shall be incompetent to testify, in either civil or criminal proceedings, by reason of his having been convicted of crime, but such fact may be given in evidence to affect his credit as a witness." The effect of this section is that "any person who has been convicted of a crime, i. e., a felony or misdemeanor, may have that fact given in evidence against him to affect his credit as a witness." Bostic v. United States, 68 App.D.C. 167, 94 F.2d 636, 637, certiorari denied 303 U.S. 635, 58 S.Ct. 523, 82 L.Ed. 1095. But, "a witness may not be asked if he has been indicted for a crime, or even if he has been tried and convicted, if the conviction was later set aside and a new trial granted." Thomas v. United States, 74 App. D.C. 167, 121 F.2d 905, 907. Though the admissibility of the conviction, and the purpose for which it is received, are clearly established, we have found no decision in this jurisdiction establishing or denying the right of the witness to explain the circumstances of his prior conviction. In other jurisdictions the courts are not in accord.

A few cases indicate that a witness may even deny his guilt of the former charge.[1] However, the great majority of cases hold that the prior conviction is conclusive of the witness's guilt and may not be rebutted by any attempted proof of innocence. These cases, however, are in wide disagreement as to whether the witness shall be allowed "to explain the circumstances of the offense, as extenuating the act and diminishing its significance." Wigmore on Evidence, 3d Ed., § 1117(3). On the one side many cases hold that no explanation of a conviction can be given, because it would lead to investigation of a matter wholly collateral to the issue to be tried. The position of these authorities is well stated in Lamoureux v. New York, N. H. & H. R. Co., 169 Mass. 338, 47 N.E. 1009, 1010, where the court, speaking through Holmes, J., said: "The plaintiff, in cross-examination of one of the defendant's witnesses, put in a conviction of crime to discredit him. Pub.St. c. 169, § 19. Upon redirect examination the witness was asked to state the circumstances, the evidence being offered to show the extent of the wickedness involved in the act, and to show the circumstances. This evidence was excluded. Logically, there is no doubt that evi-

[1] Wagman v. United States, 6 Cir., 269 F. 568, certiorari denied 255 U.S. 572, 41 S.Ct. 376, 65 L.Ed. 792; Sims v. Sims, 75 N.Y. 466, but cf. People v. Michaels, 168 App.Div. 258, 153 N.Y. S. 796, and People v. Tait, 234 App.Div. 433, 255 N.Y.S. 455; Reed v. State, 66 Neb. 184, 92 N.W. 321.

dence tending to diminish the wickedness of the act, like evidence of good character, which is admissible, does meet, as far as it goes, the evidence afforded by the conviction, since that discredits only by tending to show either general bad character, or bad character of a kind more or less likely to be associated with untruthfulness. (Citation) Nevertheless, the conviction must be left unexplained. Obviously, the guilt of the witness cannot be retried. (Citations) It is equally impossible to go behind the sentence to determine the degree of guilt. Apart from any technical objection, it is impracticable to introduce what may be a long investigation of a wholly collateral matter into a case to which it is foreign, and it is not to be expected or allowed that the party producing the record should also put in testimony to meet the explanation ready in the mouth of the convicted person. Yet, if one side goes into the matter, the other must be allowed to also."

Other cases in accord with this position are cited below.[2]

On the other hand, many authorities are to the effect that, though the witness cannot deny his guilt, he should be allowed to offer evidence as to the circumstances of the offense in mitigation of its effect upon his credibility. The position of these authorities is well stated in Donnelly v. Donnelly, 156 Md. 81, 143 A. 648, 650, where the court said: "For the purpose of discrediting a witness, the caveatee introduced in evidence the record of his conviction in the United States court of the crime of using the mails to defraud. The witness was jointly indicted with another, and the crime charged was sending through the mail a letter demanding the payment of a large sum of money under penalty of death to the person upon whom the demand was so made. In order to restore the credibility of a witness so attacked, the party may not give evidence that he was not guilty of the crime, since the conviction is conclusive evidence of his guilt, but, although good ground may be assigned and authority found for a different conclusion, the sounder and fairer rule seems to be that the witness may be allowed to explain the circumstances of the offense, if in extenuation of the act and in mitigation of its effect."

Other cases in accord with this position are cited below.[3]

We, like other courts, recognize and appreciate the reasons behind each rule, but have concluded, since the conviction is received solely to affect the credit of the witness, that the fairer rule is to permit a witness to explain the circumstances surrounding his conviction in order that the jury may have before it those circumstances in deciding what weight shall be given to the conviction on the question of the witness's credibility.[4] Particularly do we feel that this is the fairer rule where the witness is defendant in a criminal case and the prior conviction, though permitted solely for the purpose of affecting the credibility of the defendant, may have some tendency in the minds of the jury to prove his guilt of the crime for which he is then on trial. Accordingly, we think this assignment of error is well taken.

Further error is assigned with respect to two requested prayers for instruction to the jury. The first of these dealt with the burden of proof and appellant requested that the jury be charged that the presumption of innocence abides with the defendant until the evidence convinces the jury of the defendant's guilt

---

[2] Smith v. State, 102 Miss. 330, 59 So. 96; State v. Jones, 249 Mo. 80, 155 S. W. 33; Territory v. Garcia, 15 N.M. 538, 110 P. 838; State v. Keillor, 50 N.D. 728, 197 N.W. 859; Hendricks v. Portland Electric Power Co., 134 Or. 366, 289 P. 369, rehearing denied 134 Or. 366, 292 P. 1094; State v. Madison, 23 S.D. 584, 122 N.W. 647. Cf. Fuller v. State, 147 Ala. 35, 41 So. 774; Harper v. State, 106 Ohio St. 481, 140 N.E. 364; State v. Leo, 80 N.J.Law 21, 77 A. 523.

[3] Hopper v. State, 151 Ark. 299, 236 S.W. 595; South Covington & C. St. Ry. Co. v. Beatty, 20 Ky.Law Rep. 1845, 50 S.W. 239, but cf. Shields v. Conway,

133 Ky. 35, 117 S.W. 340; State v. McClellan, 23 Mont. 532, 59 P. 924, 75 Am.St.Rep. 558; Chappel v. State, 136 Tex.Cr.R. 528, 126 S.W.2d 984; Remington v. Judd, 186 Wis. 338, 202 N.W. 679. See also cases cited in Note 1.

[4] See Murray v. United States, 53 App. D.C. 119, 125, 288 F. 1008, 1014, certiorari denied 262 U.S. 757, 43 S.Ct. 703, 67 L.Ed. 1218, where it was said: "The remoteness of the convictions affected only the weight to be given to them as evidence, and was for the jury, who would in connection therewith consider other relevant testimony, including defendant's statement that since 1911 he had not been in any trouble."

"beyond a reasonable doubt *to a moral certainty*." The court granted this instruction in its entirety except that it struck out the words which we have italicized. We find no error in this action of the court. The addition of the words "to a moral certainty" would not, we think, add anything to the instruction.[5] The words themselves would require explanation by the court, and while appellant says that the court did not explain to the jury what was meant by "reasonable doubt", this statement is not borne out by the record because the substance of the entire charge is not set forth in the record as required by our Rule 23 (b). It was the duty of the court to include in its charge a definition of reasonable doubt (Egan v. United States, 52 App. D.C. 384, 393, 287 F. 958, 967), and we cannot assume that the court failed in its duty in this respect.

■ The prosecution offered evidence by a handwriting expert with respect to the disputed check and appellant requested the court to charge the jury as follows: "The jury are instructed that the testimony of the handwriting expert is known as opinion evidence, and was admitted for the. purpose of aiding the Jury to make up their minds on matters of fact submitted to them for decision, but the Jury are cautioned that of all kinds of evidence admitted in Court, this is the most unsatisfactory. *It is so weak and decrepit as scarcely to deserve a place in our system of jurisprudence.* And even though the testimony of the handwriting expert had been uncontradicted, such evidence has no binding force and the Jury may give it such weight as they see fit or you may reject it entirely, and decide the case solely upon the direct evidence of persons who were present and saw Mrs. Lusby sign the check."

The court granted the instruction after striking out the italicized sentence. That sentence was taken from the language of Cartter, C. J., in Cowan v. Beall, 1 MacArthur 270, decided in 1874. Whether such language was justified seventy years ago we cannot say, but the modern trend certainly is to recognize the value of testimony of handwriting experts and we do not feel that such language is justified today in view of the advance made in the scientific study of handwriting. See Wigmore on Evidence, 3d Ed., § 1998. Fifty years ago, in Keyser v. Pickrell, 4 App.D. C. 198, 208, the court, speaking of handwriting experts, said: "Notwithstanding the frequent severe criticism of expert testimony, the tendency in modern practice has constantly been towards the extension of the field of its operations. In many instances the testimony of experts is indispensable. * * * The objections urged, however, may all be classified as affecting the credibility and weight of the evidence rather than its competence, and as such may be left for consideration of the jury." [6]

We think the instruction as granted was as favorable to appellant as could possibly be asked.

Reversed with instructions to award a new trial.

---

[5] For an interesting account of the origin and use of this phrase, see Wigmore on Evidence, 3d Ed., § 2497.

[6] Cf. McCarthy v. United States, —— U.S.App.D.C. ——, 145 F.2d 577.